No. 25-1372

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

SURGICAL INSTRUMENT SERVICE COMPANY, INC.,

*Plaintiff-Appellant*,

v.

INTUITIVE SURGICAL, INC.,

*Defendant-Appellee*.

On Appeal from the United States District
Court for the Northern District of California
(Case No. 21-cv-3496-AMO) (Judge Araceli Martinez-Olguín)

**BRIEF OF WASHINGTON LEGAL FOUNDATION AS AMICUS
CURIAE IN SUPPORT OF DEFENDANT-APPELLEE**

Cory L. Andrews
Zac Morgan
 *Counsel of Record*
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave. NW
Washington, DC 20036
(202) 588-0302
zmorgan@wlf.org

November 5, 2025

## RULE 26.1 DISCLOSURE STATEMENT

Washington Legal Foundation has no parent company, issues no stock, and no publicly held company owns a 10 percent or greater interest in it.

# TABLE OF CONTENTS

Rule 26.1 Disclosure Statement ................................................................. i

Table of Contents .................................................................................... ii

Table of Authorities ............................................................................... iii

Interest of Amicus Curiae ....................................................................... 1

Introduction and Summary of Argument ................................................. 1

Argument ................................................................................................ 5

I.    THE *EPIC* FACTORS APPLY HERE—AND SO SIS MUST LOSE ............... 5

II.   AFFIRMANCE WILL SAVE VENERABLE ANTITRUST PRINCIPLES ON SINGLE-BRAND MARKETS ................................................................. 9

Conclusion ............................................................................................ 14

Certificate of Compliance ..................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple, Inc. v. Pepper*,
   587 U.S. 273 (2019) .................................................................................. 1

*Coronavirus Rep. v. Apple*,
   85 F.4th 948 (9th Cir. 2023) ...................................................................... 5

*Eastman Kodak Company v. Image Tech. Services*,
   504 U.S. 451 (1992) ............................................................................. 2, 5

*Epic Games, Inc. v. Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023) ........................................................ 2, 5, 6, 7, 8

*Epic Games, Inc. v. Google LLC*,
   147 F.4th 917 (9th Cir. 2025) ............................................................. 1, 13

*Forsyth v. Humana, Inc.*,
   114 F.3d 1467 (9th Cir. 1997) ................................................................... 8

*ILC Peripherals Leasing Corp. v. Int'l Bus. Machines Corp.*,
   458 F. Supp. 423 (N.D. Cal. 1978) ......................................................... 12

*Ill. Tool Works, Inc. v. Indep. Ink, Inc.*,
   547 U.S. 28 (2006) ............................................................................. 3, 6, 7

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   361 F. Supp. 3d 324 (E.D.N.Y. 2019) .................................................... 11

*Innovative Health, LLC v. Webster*,
   Case No. 22-55413, 2024 WL 62948 (9th Cir. Jan. 5, 2024) ................... 6

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1986) ................................................................................ 6, 9

*Lacey v. Maricopa Cnty.*,
    693 F.3d 896 (9th Cir. 2012) ................................................................ 8

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008) .............................................................. 8

*Ohio v. Am. Express Co.*,
    585 U.S. 529 (2018) ............................................................................. 8

*Pac. Bell. Tel. Co. v. linkLine Communc'ns, Inc.*,
    555 U.S. 438 (2009) ............................................................................. 9

## **Other Authorities**

Philip Bobbitt,
    *The Shield of Achilles: War, Peace, and the Course of History*
    (Anchor Books 2003) .......................................................................... 10

Frank H. Easterbrook,
    *Comparative Advantage and Antitrust Law*,
    75 Cal. L. Rev. 983 (1987) ............................................................. 3, 11

Frank H. Easterbrook,
    *The Chicago School and Exclusionary Conduct*,
    31 Harv. J.L. & Pub. Pol'y 439 (2008) .............................................. 10

Frank H. Easterbrook,
    *The Limits of Antitrust*, 63 Tex. L. Rev. 1 (1984) ...................... 9, 11

United States,
    *Working Party No. 3 on Co-operation and Enforcement . . .*,
    Org. for Econ. Co-operation & Dev. (June 4, 2019) ....................... 12

**INTEREST OF AMICUS CURIAE**[*]

Washington Legal Foundation is a nonprofit, public-interest law firm and policy center with supporters nationwide. WLF promotes free enterprise, individual rights, limited government, and the rule of law. It often appears before the U.S. Supreme Court and this Court to advocate for a consumer welfare-maximizing interpretation of federal antitrust law. *Apple, Inc. v. Pepper*, 587 U.S. 273 (2019); *Epic Games, Inc. v. Google LLC*, 147 F.4th 917 (9th Cir. 2025).

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Surgical Instrument Service Company (SIS) doesn't make surgical robots. It doesn't even make surgical robotic tool replacement parts. Instead, SIS cracks Intuitive's products and manipulates them so that they work beyond FDA-approved limits. Intuitive doesn't allow for that kind of unauthorized use. SIS thinks that's an antitrust violation and a case sufficient to be heard by a jury. The theory? Intuitive is engaged in illegal tying—not by requiring hospitals to buy a second Intuitive product alongside a da Vinci machine, but because Intuitive contracts with

---

[*] No party's counsel authored any part of this brief. No one, apart from Amicus and its counsel, contributed money intended to fund the brief's preparation or submission. All parties have consented to WLF's filing of this brief.

1

hospitals to keep unauthorized hacked products from being used on patients. This, SIS insists, is an illegal tie-in with a single-brand aftermarket. The district court heard SIS out—and even allowed trial to begin on this claim. But the court eventually realized that there's nothing here. SIS invokes a lot of minerun antitrust vocabulary, but it falls short of pleading minerun antitrust substance. So the district court ordered judgment as a matter of law and dismissed the jury. That was the right call.

Two years ago, applying the Supreme Court's decision in *Eastman Kodak Company v. Image Technical Services*, 504 U.S. 451 (1992), this Court laid down a four-factor test that antitrust plaintiffs must meet for a single-brand aftermarket to reach a jury verdict. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 977 (9th Cir. 2023). "In sum, to establish a single-brand aftermarket, a plaintiff *must* show" serious information asymmetries between the contracting parties, not least that "the challenged aftermarket restrictions are 'not generally known' when the consumers make their foremarket purchase." *Id.* (emphasis supplied). Even SIS concedes it can't make that case. Putting aside the econometric

factors (SIS admits it can't meet those either), the sophisticated parties purchasing Intuitive surgical robots knew exactly what they were doing.

SIS's theory (backed by the Federal Trade Commission) is that *Epic* doesn't apply when there's alleged market power in the foremarket. That can't be right. A valid tying claim—aftermarket or no—*always* must come with an allegation of market power in the tying product space. *Ill. Tool Works, Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 46 (2006). SIS is trying to juke the *Epic* factors by pretending that carrying the normal burden is somehow unique. The Court shouldn't fall for it. *Epic* is the circuit's rule for determining whether a single-brand aftermarket case is viable—full stop.

True, *Epic* imposes an exacting burden on antitrust plaintiffs seeking liability under a single-brand aftermarket theory. But that's a good thing. Creating a standard where it's trivially easy for a plaintiff (or an enforcement agency) to reduce the market down to a company's brand is a surefire way to chill innovation and, along with it, wealth and human flourishing. New technology and novel business practices are often hard to categorize at first blush—that's what makes them new. Frank H. Easterbrook, *Comparative Advantage and Antitrust Law*, 75 Cal. L. Rev.

3

983, 986 (1987) ("Often it takes a decade or more to determine what a business practice really does").

Adopting SIS's legal theory—a pseudo per se liability rule so long as a single-brand aftermarket can be confected—will create incentives for destroying innovative foremarket products by claiming that some subcomponent constitutes an illegal tie-in. That we must speak in generalities about all this is the point—if we knew what the next bleeding-edge advance in medical devices, biotechnology, energy, or widgets would be at the time of this writing, we'd be billionaires, not nonprofit attorneys. And those are just the consequences for making single-brand aftermarkets "common fare." Intuitive Br. 47.

SIS's case also contains within it the seeds of a relaxed approach to single-brand markets *generally*—risking a future where every innovative first-mover in a new market space can be condemned as a monopolist in their own brand and stunted by force of law. That's much worse. Such an approach will erode the procompetitive aims of antitrust law and invite rent-seeking lawsuits by rivals.

The Court should decline SIS's invitation for a get-out-of-*Epic*-free card and affirm the district court.

4

## ARGUMENT

### I.   THE *EPIC* FACTORS APPLY HERE—AND SO SIS MUST LOSE.

Just two years ago, this Court twice ruled that plaintiffs may succeed on a single-brand aftermarket claim only if they can demonstrate that the alleged tie imposes a "'lock-in' [on] unknowing customers." *Epic*, 67 F.4th at 976; *Coronavirus Rep. v. Apple*, 85 F.4th 948, 955 (9th Cir. 2023) (noting that unlawful single-brand aftermarkets "generally show[] that the defendant exploited consumers' unawareness of the restrictions on the aftermarket and must still show the cross-elasticity required to define a market"). SIS now asks this Court to cabin those cases to their bare facts. But those cases are general rules—not mild suggestions.

As the *Epic* Court held, when an antitrust complaint alleges an inappropriately tied product in a single-brand aftermarket, there is no short-cut that permits a plaintiff to skip judicial review of that complaint and advance to the jury. 67 F.4th at 977. Rather, courts must ensure themselves that the "plaintiff has proven such a[n unknowing] lock-in . . . 'on a case-by-case basis, focusing on the 'particular facts disclosed by the record.'" *Id.* (quoting *Eastman Kodak*, 504 U.S. at 467). And the *Epic* Court explained precisely how that "case-by-case" review should proceed:

5

"to establish a single-brand aftermarket, a plaintiff must show: (1) the challenged aftermarket restrictions are 'not generally known' when consumers make their foremarket purchase; (2) 'significant' information costs prevent accurate life-cycle pricing; (3) 'significant' monetary or non-monetary switching costs exist; and (4) general market-definition principles regarding cross-elasticity of demand do not undermine the proposed single-brand market." *Id.* A plaintiff must meet all four factors. *Id.; Innovative Health, LLC v. Webster*, Case No. 22-55413, 2024 WL 62948 at *2 (9th Cir. Jan. 5, 2024) (applying *Epic*). SIS meets none.

To save its case, SIS (and its amici, including the Federal Trade Commission) contend that *Epic* is limited to cases where there is no market power in the tying foremarket. But there's no difference to that distinction. Even a per se tying case requires a plaintiff to plead market power in the tying product. *Ill. Tool Works*, 547 U.S. at 46 (2006); *cf. Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 13–14 (1986). If there's no evidence of market power, there's never any need for the court to reach the tied product market or aftermarket. *Ill. Tool Works*, 547 U.S. at 46; *contra* SIS Br. 27 ("lock-in factors" "apply only where . . . there is meaningful interbrand competition upstream"). So unless the

6

Supreme Court's tying precedents are just wrong—and that's not for this Court to say—*Epic* must apply to all allegations of an illegal tie-in based on a single-brand aftermarket.

Yet because SIS chose to "dispense with a per se case and proceed solely under the rule of reason," it urges the Court to bypass binding circuit law. SIS Br. 7 (italics omitted). But since "in *all* cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product," *Ill. Tool Works*, 547 U.S. at 46 (emphasis supplied), this is a bit like pickpocketing a billfold and then seeking a reward for returning it. It's no answer that SIS "must prove not only the allegedly unlawful restraint, but its actual anticompetitive effects as well." SIS Br. 7. That's what the *Epic* factors sift for. *Epic*, 67 F.4th 997 ("A tie is per se unlawful if . . . the defendant has market power in the tying product market") (italics omitted). So when SIS's case fits a normal antitrust framework, it asks for special treatment.

How about when SIS's case is unusual? Well, then it asks for its case to be "treated . . . like any other tying case in which a seller conditions access to a product in one market (the tying market) on buying a product in a second market (the tied market)." SIS Br. 26. It should go

7

without saying that the bog-standard "any other tying case" does not include an allegation of a single-brand aftermarket. Once a plaintiff makes that accusation, it assumes the burden of distinguishing its allegation from eyes-open contracting. *Epic Games*, 67 F.4th at 977. SIS never did that work, despite this Court's general admonition that "contractual obligations [a]re not a cognizable source of market power." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1047 (9th Cir. 2008) (discussing antitrust claim in *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1472–76 (9th Cir. 1997) (italics omitted), *overruled on non-antitrust grounds, Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012)).

So while professing a desire for normal treatment under the rule-of-reason, SIS elides the *Epic* factors—even though those factors work within the rule-of-reason to sift for anticompetitive effect. Far from asking for the "typical" rule, SIS is asking to be excused from its burden of showing that it's not targeting a fair, or even procompetitive, contracting practice—even though that's the gravamen of the rule-of-reason. *Ohio v. Am. Express Co.*, 585 U.S. 529, 542 (2018). In short, SIS is trying to backdoor the functional equivalent of per se liability for single-brand ties under the cloak of the rule-of-reason. The district court

saw the wolf under the wool and ruled for Intuitive. This Court should do likewise.

## II. AFFIRMANCE WILL SAVE VENERABLE ANTITRUST PRINCIPLES ON SINGLE-BRAND MARKETS.

The *Epic* rule, with its attendant skepticism about single-brand markets, is not just law—it's sage law. That standard recognizes and implements the Supreme Court's instruction that "[a]s a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell. Tel. Co. v. linkLine Communc'ns, Inc.*, 555 U.S. 438, 448 (2009). *Epic*'s rule is exactly the type of "presumption[]" that "guide[s] businesses in planning their affairs by making it possible for counsel to state that some things do not create risks of liability." Frank H. Easterbrook, *The Limits of Antitrust*, 63 Tex. L. Rev. 1, 14 (1984). Limiting *Epic* to its facts would save SIS's complaint, yes, but it would have disastrous effects on antitrust jurisprudence.

After all, "[b]uyers often find package sales attractive." *Jefferson Parish*, 466 U.S. at 12. And, indeed, evidence presented at trial below showed that the da Vinci system (a complicated piece of surgical machinery) is freely chosen by sophisticated entities (hospitals) seeking

9

to improve their reputation and portfolio of available and safe surgical options. Intuitive Br. 7–8; *see also* 2-ER-224–25. And hospitals take price into consideration when making choices between surgical tools. *See* Intuitive Br. 7–8. The *Epic* factors allow for such eyes-open contracting. SIS's rule would risk rendering all such contracts illegal—or at a minimum, a serious litigation risk—without considering whether such a deal has a procompetitive lifecycle. After all, "[w]hat distinguishes exclusion from efficiency?" Frank H. Easterbrook, *The Chicago School and Exclusionary Conduct*, 31 Harv. J.L. & Pub. Pol'y 439, 443 (2008) (punctuation altered). The answer is "[w]hat happens in the *future*: exclusion leads to monopoly overcharges later, and efficiency does not." *Id.* (emphasis in original, capitalization altered).

The change in the law SIS is demanding will have corrosive consequences. It might save SIS's complaint, but it will also empower plaintiffs and enforcement agencies to bring case after case on single-brand aftermarket theories that will deem a specific good, service, or business practice illegal without consideration for consumer welfare. It's impossible to predict how that will go. That's because "[t]he past, it turns out, is all we know about the future." Philip Bobbitt, *The Shield of*

*Achilles: War, Peace, and the Course of History* 810 (Anchor Books 2003). While market-disruptive technologies may be facilely compared to tie-ins of the past; real innovation always breaks molds. *Cf.* Easterbrook, *Comparative Advantage*, 75 Cal. L. Rev. at 986 ("Often it takes a decade or more to determine what a business practice really does"). Nobody—not SIS, the FTC, amicus, or this Court—can know what life-saving, productivity-enhancing, or efficiency-maximizing goods, deals, or services will be strangled by expanding the coercive reach of antitrust on single-brand tie-ins. Real anticompetitive monopolies always go bust eventually, but outlawed efficiencies never arrive to market. In short, "judicial errors that tolerate baleful practices are self-correcting while erroneous condemnations are not." Easterbrook, *Limits*, 63 Tex. L. Rev. at 3. SIS's rule risks piling up erroneous condemnations.

Worse yet, this court's open-ended embrace of one-company-is-one-aftermarket would inevitably bleed into antitrust market definition generally, taking down the longstanding presumption against single-brand markets. Intuitive Br. 26 (collecting cases); *see also In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 343 (E.D.N.Y. 2019) ("It is an understatement to say that single-brand

markets are disfavored"). That would fashion a dangerous cudgel for both criminal and civil antitrust authorities to wield in bleeding-edge market spaces. As Intuitive's brief correctly notes, single-brand markets are dangerous because they "short-circuit" the antitrust rules. Intuitive Br. 26.

That's not just a temptation for the plaintiff's bar or the government. Judges and juries are rarely skilled at predicting market behavior or rooting out the rare antitrust exception. *See, e.g.,* United States at 3 & n.6, *Working Party No. 3 on Co-operation and Enforcement . . .*, Org. for Econ. Co-operation & Dev. (June 4, 2019); https://perma.cc/9ZF4-KSWP (noting that federal courts are "courts of general jurisdiction, staffed by generalist judges who do not necessarily have substantial antitrust experience . . . there is no formal requirement that [] judges hearing competition matters must have specialized training in competition issues or economics"); *ILC Peripherals Leasing Corp. v. Int'l Bus. Machines Corp.*, 458 F. Supp. 423, 447 (N.D. Cal. 1978) ("When asked by the court whether a case of this type should be tried to a jury, the foreman of the jury said, 'If you can find a jury that's both a

12

computer technician, a lawyer, an economist, knows all about that stuff, yes . . . but we don't know anything about that'").

And so a rule that encourages defining a problem down to a single company or odd business practice has intuitive appeal. It's simple, clean—a bright-line rule. But with clarity comes "making every company a monopolist in its own brand and threaten[ing] to turn ordinary," or novel-yet-competitive, "contract provisions into Sherman Act violations punishable by treble damages." Intuitive Br. 3. Simple, clean—and all the brightness of napalm for the Nation's wealth-generating market economy. Salvaging SIS's poorly pleaded and factually insufficient case, *id.* 48–61, is not worth that candle. *Cf. Google*, 147 F.4th at 935 (observing "the principle that relevant markets are not independent, freestanding entities defined in a vacuum").

## CONCLUSION

SIS's case should never have crossed the threshold of the courthouse door. This Court should affirm.

                                    Respectfully submitted,

                                    /s/ Zac Morgan
                                    Cory L. Andrews
                                    Zac Morgan
                                       *Counsel of Record*
                                    WASHINGTON LEGAL FOUNDATION
                                    2009 Massachusetts Ave. NW
                                    Washington, DC 20036
                                    (202) 588-0302
                                    zmorgan@wlf.org

November 5, 2025

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limits of Federal Rule of Appellate Procedure 29(a)(5) because it contains 2,589 words, excluding those parts exempted by Federal Rule of Appellate Procedure 32(f).

I also certify that this brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it uses 14-point Century Schoolbook font.

/s/ Zac Morgan
Zac Morgan
*Counsel for Amicus Curiae*
*Washington Legal Foundation*

November 5, 2025